**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles James NADDEO, Defendant.**

**No. CR 70–264.**

United States District Court,
N. D. Ohio, E. D.

Jan. 18, 1972.

Frederick Coleman, U. S. Atty., David Margolis, Robert Gary, Joseph Hart, Organized Crime Task Force, Cleveland, Ohio, for plaintiff.

Bennet Kleinman, Cleveland, Ohio, for defendant.

### MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

On August 20, 1968, defendant allegedly gave false answers to questions propounded by various attorneys in two cases still pending in the United States District Court for the Central District of California (Case Nos. 68–433 EC and 68–466 EC), Laundry, Dry Cleaning and

Dye House Workers Union, Local No. 52, etc., et al. v. W. S. Gross, etc., et al.; and Laundry, Dry Cleaning and Dye House Workers International Union v. Laundry, Dry Cleaning and Dye House Workers Union, Local No. 52, etc., et al. On May 6, 1970, an indictment was returned against Charles J. Naddeo, alleging that in his answers in the deposition of August 20, 1968, he willfully and knowingly and contrary to his oath stated material matters which he did not believe to be true, in violation of Section 1621 of Title 18 of the United States Code. The issue before this Court is whether or not the matters which the defendant falsely stated were material.

■■ In order to violate 18 U.S.C. 1621, an untrue statement must be a misstatement of a material matter. This matter need not relate solely to the main issue under inquiry. As long as the inquiry is proper, any false statement may be the basis for a perjury conviction, even as to a collateral issue. Barnes v. United States, 378 F.2d 646 (5th Cir.1967), cert. den., 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184 (1967).

■ The test of materiality in perjury prosecution " . . . is whether the testimony has a natural effect or tendency to influence, impede or dissuade the investigating body from pursuing its investigations." United States v. Moran, 194 F.2d 623, 626 (2d Cir.1952), cert. den., 343 U.S. 965, 72 S. Ct. 1058, 96 L.Ed. 1362 (1952). It is settled that the question of the materiality of the alleged perjury is a question of law to be ruled upon by the Court, rather than a question of fact to be determined by the jury. Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929); United States v. Harrell, 220 F.2d 516 (5th Cir.1955); United States v. Stone, 429 F.2d (2d Cir. 1970); Beckanstin v. United States, 232 F.2d 1 (5th Cir.1956).

■ This Court agrees with the contentions of the United States that in determining the materiality of the inquiry the Court should place itself within the circumstances present at the time the inquiry was made and ask whether the answer given materially affected the questions asked. Judge Learned Hand in United States v. Siegel, 263 F.2d 530, 533 (2d Cir.1959), cert. den., 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035 (1960) commented on the necessity of showing that the false answers blocked successful investigation, or that true answers would have led to relevant disclosures. He said:

"Conceivably the omitted passages, if followed up by cross-examination, might have led to relevant disclosures. However, we do not rest our affirmance of the convictions upon that possibility; on the contrary *we will assume, arguendo, that the disclosure of the omitted passages would have contributed nothing to what the grand jury was seeking.* The error of the appellants' position is that they confuse the 'materiality' of the question with the 'materiality' of the answer, as though it was proof that the question was immaterial, if the answer would have been so. It is, however, at once apparent that this substitutes the opinion of the witness for that of the tribunal as to the 'materiality' of the answer. No matter how right the witness might be in believing that the answer would not contribute to the investigation, he was bound to leave that decision to the tribunal. *A question is 'material,' no matter what the answer may be, unless it appears by its terms that the answer cannot be 'material'.*" (Emphasis added.)

The determination of materiality is not to be made by the witness, but by the Court. United States v. Schaier, 175 F. Supp. 838, 842 (S.D.N.Y.1959); United States v. Alu, 246 F.2d 29 (2d Cir.1957). The test of materiality varies between trial and criminal grand jury or civil deposition. The statements here were made during the course of a civil deposition taken pursuant to Rule 26(b) (1), Fed.R.Civ.P., so the standards to be used is whether or not the false testimony had the material effect or tendency to impede, influence or dissuade the examiner from pursuing his investigation.

See United States v. Stone, 429 F.2d 138 at 140 (2d Cir.1970). This standard is broader than that used to determine materiality during trial. Having established the appropriate test for materiality, the question before this Court is whether the statements made by the defendant in the deposition were material.

■ The defendant, while admitting that he made a misstatement, contends that he made an inadvertent misstatement of fact and, therefore, he cannot be in violation of 18 U.S.C. § 1621. See Bechanstin v. United States, 232 F.2d 1 (5th Cir.1956). However, this is not the issue presently before the Court. The issue of inadvertence is a jury question and cannot be determined at this juncture. The issue is whether the misstatement of the defendant was material.

■ The defendant was asked questions as to whether the International Union was engaged in acts of corruption, misconduct, racism, malfeasance, nonfeasance, or breaches of fiduciary obligations so as to justify the disaffiliation from the International of Local 52. The defendant contends that any questions concerned with the receipt of funds by him from other labor organizations were not material because the receipt of such funds could not amount to misfeasance or malfeasance in office. The defendant was, and is, a vice-president of the International. Obtaining funds from another labor union could constitute a conflict of interest and a breach of fiduciary obligations. The defendant admitted that he held two positions simultaneously. He was vice-president of Local 10 and vice-president of the International. He received more compensation for his duties than any of the other vice-presidents. In addition, the defendant received payments from Sheet Metal Workers Union, Local 266, for services rendered. He was a busy man. He worked for many unions and was rewarded handsomely by each. Such payments could be evidence of a breach of fiduciary obligations or of nonfeasance, areas of examination pursuant to Section VI of the Pretrial Conference Order in the two cases in chief.

■ In addition, defendant may have been in violation of Article XVIII, Section 3 of the Constitutional By-Laws of the International which provides that "[n]o members of the Laundry, Dry Cleaning and Dye House Workers International Union shall be a member of more than one laundry, dry cleaning and dye house workers local union at the same time under the penalty of fine or expulsion by the local union of which he or she was first a member," while Section 2 of Article XVIII provides that "[n]o person who has been expelled, suspended, stricken from the roll or rejected by any local union shall be eligible for membership until all matters are settled to the satisfaction of the local union having the grievance against the person." Questions concerning violations of these provisions would relate directly to the issue of "misconduct" or "malfeasance." The defendant in his reply brief argues that since the complaints in 68–433 EC and 68–466 EC deal with areas other than those as to which defendant was questioned, the questions asked of defendant were immaterial. Merely because a complaint was issued in one area does not mean that questions concerning ancillary areas are not material. It is possible that if defendant had not made a misstatement to his examiners, indictments or other complaints might have resulted. In this area, one may not argue backwards from the complaint. The test of materiality goes to questions asked, during investigation, on a relevant and material subject. The questions propounded fell within the scope of the Pretrial Order and, therefore, in the opinion of the district judge covered an area within the parameters of the complaint.

Given the scope of the inquiry, pursuant to the Pretrial Conference Order of June 17, 1968, the questions propounded to the defendant were material. The question of whether the statements were an unknowing misstatement is reserved for determination by a jury.

It is so ordered.