UNITED STATES of America, Plaintiff-Appellee,

v.

ONE (1) 1963, HATTERAS YACHT ANN MARIE a/k/a Shasta II, etc., Defendant-Appellant.

No. 78–1211
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1978.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Melvyn Kessler, Miami, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

**74**

RONEY, Circuit Judge:

This appeal is from the judgment of a district court sustaining forfeiture of a Hatteras yacht, the ANN MARIE, by the United States government pursuant to 19 U.S.C.A. § 1585. The district court found that defendant vessel had arrived from a foreign place within the limits of a United States customs collection district without making a report of entry in violation of 19 U.S.C.A. § 1585, making it subject to forfeiture. The court found insufficient the Government's evidence that defendant vessel had been used in connection with the unlawful importation and transportation of marijuana into the United States in violation of 49 U.S.C.A. § 781 and 21 U.S.C.A. § 881.

On appeal defendant vessel contends: first, the testimony of the customs agent summarizing contents of official logbooks and concluding that the ANN MARIE had not reported to the Miami Customs Collection District was incompetent because the agent was not the official custodian of the records, and the records were not produced in court; second, the statement of the owner to a patrol officer that the vessel had been to Bimini and had cleared customs in Ft. Lauderdale was inadmissible because no *Miranda* warnings had been given; third, certain documents taken from the boat were inadmissible because no search warrant had been obtained; fourth, the six month delay in seizure was unreasonable, therefore, laches precluded forfeiture; and fifth, 19 U.S.C.A. § 1585 is inapplicable to pleasure boats such as the ANN MARIE.

During trial defendant raised no objection to the testimony of the customs agent, neither was a defense of laches raised. Failure to raise such objections and defenses during the trial bars raising them on appeal. *Miranda* did not apply to the statements given by the owner of the vessel to the patrol officers because there was no custodial interrogation. The district court did not base its findings on the documents procured from the vessel subsequent to seizure. The plain language of 19 U.S.C.A. § 1585 renders its provisions applicable to any vessel which enters the United States from a foreign country, including pleasure boats. The judgment of the district court is affirmed.

The United States Customs office at Miami was notified by the United States Embassy in Jamaica that the ANN MARIE, a 41 foot Hatteras yacht, had departed Jamaica for Miami and might be carrying marijuana. The vessel was listed on a "hot sheet" of suspected law violators. Just days after the notification a Florida Marine Patrol officer observed the ANN MARIE moored at a marina in Stuart, Florida, within the Miami Customs Collection District.

After receiving permission to board from the owner of the vessel, Mr. Walker, the officer boarded the ANN MARIE for inspection and to check its documents and safety equipment. Prompted by the observation of a chart in plain view on which a line was drawn from Bimini to Ft. Lauderdale, Florida, the patrol officer asked Mr. Walker where the vessel had been. Walker replied that the vessel had been to Bimini, had cleared customs in Ft. Lauderdale, and was on its way to Jacksonville, Florida. A day following the officer's boarding the ANN MARIE docked in Jacksonville, located within the Tampa Customs Collection District.

On review of logbooks maintained by the Miami Customs Collection District, it was ascertained that the ANN MARIE had not reported to customs there. Title 19 U.S.C.A. § 1585 provides in pertinent part:

If any vessel or vehicle from a foreign port or place arrives within the limits of any collection [Customs] district and departs or attempts to depart, except from stress of weather or other necessity, without making a report or entry under the provisions of this chapter, . . . any such vessel or vehicle shall be forfeited . . . . . .

At that time there were sufficient grounds to seize the ANN MARIE for forfeiture. Seizure was deferred, however, at the request of the Duval County Sheriff who was investigating Walker.

At the conclusion of the sheriff's investigation, nearly six months later, the ANN MARIE was seized by U. S. Customs officers in Jacksonville, Florida. Subsequent to the seizure, customs officers found documents on the ANN MARIE which disclosed that it had been in the Bahamas and Jamaica just days before the Florida patrol officer questioned Mr. Walker when the ANN MARIE was docked at the marina in Stuart, Florida in September 1975.

## I.

The only evidence that defendant vessel was not listed in the Private Vessel Boarding Log maintained at the office of the Miami Customs Collection District Port Director was the testimony of a customs agent summarizing the contents of official records. Defendant, on appeal, contends the agent was not the official custodian of the records, the records were not introduced into evidence and the testimony of the agent was inadmissible.

At trial a customs agent testified that he had access to the official Private Vessel Boarding Log, understood how the records were maintained and regularly used the records in connection with the performance of his duties. The log lists the name of the vessel, date of landing and inspection, time of boarding, time of completion of the boarding inspection and the number of passengers. Ft. Lauderdale and Stuart, Florida are within the Miami Customs Collection District. He testified that the log did not show the vessel had cleared customs as Mr. Walker had said.

██ None of the agent's testimony concerning the records was objected to or challenged in any way by defendant during trial. Federal Rule of Evidence 103 makes clear that failure to object at trial to the admissibility of evidence constitutes a bar to raising the issue on appeal unless plain error exists. *United States v. Blackshear*, 568 F.2d 1120, 1121–1122 (5th Cir. 1978). *See United States v. Garcia*, 531 F.2d 1303, 1307 (5th Cir.), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. De Leon*, 474 F.2d 790, 792–793

(5th Cir.), *cert. denied*, 414 U.S. 853, 94 S.Ct. 148, 38 L.Ed.2d 102 (1973).

Had defendant interposed timely objections to the testimony at trial, the Government would have had an opportunity, before the close of its case, to produce the records in court and call the official custodian of the records to give testimony. Such objections can be waived, often are, and on appeal are deemed waived when not raised at trial, absent plain error. Defendant has not shown that reliance on the testimony of the agent results in plain error.

## II.

Defendant challenges the admissibility of the statement made by Walker, the owner of the vessel, to the Florida patrol officer that the vessel had "cleared customs in Ft. Lauderdale." He contends that *Miranda* warnings were not given before the statement was elicited by the officer, therefore, it is inadmissible.

This Circuit employs a four-factor test to determine whether there was a custodial interrogation requiring *Miranda* warnings: (1) whether there was probable cause to arrest at the time of interrogation; (2) whether the subjective intent of the officer was to hold the defendant; (3) whether the defendant had the subjective belief that his freedom was significantly restricted; and (4) whether the investigation had focused on the defendant at that time. *United States v. Warren*, 578 F.2d 1058, 1071 (5th Cir. 1978); *United States v. Nash*, 563 F.2d 1166, 1168 (5th Cir. 1977).

██ There was no probable cause to arrest at the time of the interrogation. The officer testified that he asked permission to board the vessel and to see their documentation papers. He had no intent to make an arrest or seize the vessel. He was acting within his authority. Walker had no reason to believe his freedom was being restricted. The questioning was not custodial in nature. *See United States v. Warren, supra* at 1070–1072.

Because the essential factors of custodial interrogation were absent, *Miranda* warn-

ings were not required. The evidence was properly admitted.

### III.

Defendant contends that evidence taken from the vessel after its seizure was wrongfully admitted. This evidence consisted of papers, invoices, and other documents showing that the vessel had been in Jamaica and the Bahamas in September 1975 just days before it was boarded by the Florida patrol officer.

This evidence was not necessary to prove the offense. Walker's statement to the patrol officer and the testimony of the customs agent clearly established that the vessel had just returned from foreign waters. In fact, the district court expressly excluded it from its determination of probable cause for seizure. No reversible error occurred.

### IV.

Defendant asserts that the Government delayed an unreasonably long time to institute forfeiture proceedings. The vessel was boarded in September 1975, but not seized until March 1976, some six months later. The Government's reason for delay was that it was cooperating with state officials investigating Walker and the vessel for smuggling activities.

Laches defense is an affirmative defense which must be raised in the pleadings in the district court. Fed.R.Civ.P. 8(c) and 12. Since the issue was never made in the district court, this Court will not consider it on appeal. *See United States v. Blackshear, supra; United States v. Garcia, supra.*

### V.

Finally, defendant contends that application of 19 U.S.C.A. § 1585 to pleasure vessels, such as the ANN MARIE is violative of due process and equal protection clauses of the Constitution. Review of § 1585 shows its terms make no distinction between pleasure craft and other vessels. Indeed, its provisions clearly apply to "any vessel" arriving within a United States customs collection district from a foreign port or place. As indicated by the district court the statute would apply to any type of vessel that leaves one Customs Collection District for another, whether it has cargo or not, prior to making the report of entry. *See The Halcon,* 63 F.2d 638 (5th Cir. 1933); *The Gemma,* 13 F.2d 149, 150–151 (D.R.I. 1926), *aff'd* 16 F.2d 1016 (1st Cir. 1927). Defendant's assertion of constitutional violations must fail.

AFFIRMED.